Atkinson, as Ad., et al. v. Hudson, Trustee.

ATKINSON, AS AD., ET AL. V. HUDSON, TRUSTEE.

VENDOR AND VENDEE: *Action for purchase money : Tender of title.*

Where the obligations of the vendor to make title and of the vendee to pay the purchase money for land are dependent, the vendor can not sue at law for the purchase price without first tendering to the purchaser a deed in conformity to the contract; but where the suit is in equity, tender before suit is not essential, but is sufficient if made with the bill. The Chancellor will then grant the proper relief to the plaintiff and relieve the defendant from cost which might not have been necessary if the tender had been made before suit.

APPEAL from *Lincoln* Circuit Court in Chancery.
Hon. J. A. WILLIAMS, Circuit Judge.

*D. H. Rousseau* for appellant.

Before a vendor by title bond can have a decree against his vendee for the purchase money, he must *at least* bring a deed into court and tender it, otherwise he must fail. *28 Ark., 27, 176; Dart. on Vendors, Waterman's ed., 519–20; Sugden on Vendors, 416; 5 Hare, 247; 1 Tur. & Russel, ch. 78.*

*McCain & Crawford* for appellee.

Review cases in *17 Ark., 279; 26 Ib., 506; 28 Ib., 27; 28 Ark., 179*, and contend that no tender of deed was necessary. If the court discovers that defendant is ready to pay, and that the suit is unnecessarily or vexatiously brought, the costs should be taxed on plaintiff, and he should be required to accept his money and deliver a deed. This is equity and common sense. The failure to tender a deed may affect *the terms of the decree*, but not the right to relief. The true doctrine is laid down in *Sorrells v. Mc-*

*Henry, 38 Ark., 133.* See, also, *Lewis v. Hawkins, 23 Wall., 127* (an Arkansas case).

2. The second plea was bad—it tendered no issue. *35 Ark., 109; 1 Ib., 95; Newman on Pl. and Pr., 676–7; Ib., 343, et seq.*

EAKIN, J. On the twenty-eighth of June, 1883, Hudson, as trustee for the heirs of Nancy J. Hudson, brought this suit in equity against the administrator and heirs of John A. Darrah, to enforce payment of certain notes given for the purchase of land, and to subject the property to the lien.

. He alleges that on the eighteenth of September, 1869, the said heirs of Nancy J. being the owners and in possession of the lands, sold them, by their trustee, to said Darrah, and put him in possession. By their trustee and agent, Hudson, they executed a bond for title, and Darrah executed notes to the trustee for the purchase money. The title bond is not exhibited, nor is it in any manner described otherwise than as above. Darrah executed two notes, which are incorporated in the bill, and which express that they were given for the land in question. They are made payable to Hudson, as "trustee for the heirs of Nancy J. Hudson," for the sum of $850 each, due, one on the tenth of January, 1870, and the other on the first day of January, 1871, both to bear interest at the rate of ten per cent. after maturity. Divers credits had been, from time to time, indorsed on each, and there was claimed as due a balance on both of about $935, with some interest. A part of the land, it is alleged, was afterwards sold by Darrah to Milus Easter, who is joined as defendant. Darrah died in 1882. The prayer is for a foreclosure of the lien, a sale of the land, and general relief.

13

The defendants were duly served, some by publication and some personally. An attorney *ad litem* was appointed for the non-residents.

At the August term, 1883, the administrator of Darrah demurred to the bill, stating that it did not show facts sufficient to make a cause of action; and, also, that complainant had not exhibited with his complaint any good and sufficient deed from the *cestui que trust* to the lands. Further stating, for cause, that the complainant, as trustee, did not, *at or before* the commencement of the suit, nor at any time since, tender to the administrator any such deed.

With the demurrer he filed an answer in two paragraphs. In the first he admits the sale of the land to his intestate, and the execution of the notes; and that the trustee executed a title bond whereby he covenanted, "upon the payment of said notes, that plaintiff, as such trustee, would properly make, execute and deliver to his intestate a good and sufficient deed for the lands so sold;" and then alleges that complainant, as such trustee, had wholly failed to tender to the intestate, or to the administrator, any such deed before the commencement of the suit, and that he had made none since. Then he asserts, upon information and belief, that the complainant can not make any such deed.

The second paragraph sets up vaguely and indefinitely, upon information and belief, without stating any amounts, that the intestate had, in his lifetime, made other payments upon the notes which had not been credited—stating that the complainant, as trustee, had said to another person, a short time before intestate's death, that the greater part of the purchase money due from the intestate was paid, and that there was little, if anything, due on the land.

Respondent asks that complainant be required to establish the amount due him by the strictest proof, and that, to this end, a Master be appointed to take the account and report the amount really due.

Both these paragraphs were met by a general demurrer. The defendant's demurrer to the bill was overruled, and the complainant's demurrer to the answer was sustained. Whereupon, the administrator declined to plead further, and excepted to the ruling.

The court then decreed that the bill be taken for confessed as against all the defendants—found the amount due upon the notes, and declared that the same was a lien upon the land. It was ordered to be sold for the debt and costs, reserving the portion conveyed to Easter for the last—the surplus to be paid to the administrator of Darrah.

The defendants prayed and obtained an appeal from the clerk of this court.

The decree is too indefinite to be executed by the commissioner for sale. The lands sold to Easter are no where defined. He is one of the appellants, and it concerns him that too much of the lands should not be sold, as belonging to the estate before resorting to his. He is entitled to exoneration of all his tract to the extent of the full value of the lands remaining in the estate. If his lands are encroached upon and any part of them sold primarily, he would not only be deprived of that exoneration *pro tanto*, but might furnish the surplus to go to the administrator. On the other hand, if too little be sold and the rest be assigned to Easter, the estate will lose the benefit of a proper surplus. The commissioner has nothing to guide him in the execution of the decree, and *non constat* that he will be able to find out *aliunde* what lands to sell first. The court evidently intended to marshal the lands in Easter's favor, which was his right, although he did not

Atkinson, as Ad., et al. v. Hudson, Trustee.

answer the bill. It resulted from the concessions of the complainant, but no decree should have been pronounced without some description of his lands, either in the decree or in the proof or pleadings. Practically, however, there may have been no embarrassment, and we presume the appeal was not upon that error. We have deemed it, nevertheless, proper for notice.

VENDOR AND VENDEE: Suit for purchase money: Tender of deed. This case makes it expedient to define the principles and practice which should govern proceedings to foreclose such liens as arise in favor of the vendor when a title bond is given, which provides for the execution of a good and sufficient deed before, or contemporaneous with, the payment of the purchase money—leaving out of view that class of cases where the contract shows that the two things were not to be dependent.

A title bond, although it has become a common mode of making an equitable conveyance, is in fact but an executory contract in writing for the sale of real estate, to be afterwards consummated by further action when the conditions may be complied with. It has been assimilated to a conveyance from the vendor, followed by a reconveyance to him from the vendee, by way of mortgage to secure the purchase money. It does resemble that, and in effect has substantially the same consequences in most respects; yet, where the real justice of the case requires a distinction to be noticed, the general analogy has not been suffered to mislead. See case of *Scharff v. Dodge, 33 Ark., 340*, in which it was held that, although a tender of the debt on the day by a mortgagor would reclothe him with the legal estate, and destroy the lien, yet that effect could not result from a tender by a vendee under a title bond, who never had a legal title at all.

In every respect a title bond is but an agreement to convey, from which a court of equity creates an equitable

estate in the vendee, holding the vendor as his trustee for the land and the purchaser as the vendor's trustee for the money. The notes are the evidences of the agreement, on the part of the purchaser. A suit by either against the other is a suit for specific performance, to have the contract carried out and made effectual, and the true principles which should govern such suits are to be sought in those established in cases of specific performance. I imagine that some confusion, as to practice, has resulted from losing sight of this, and assimilating a suit by the vendor who has made a title bond, to a suit by a mortgagee to foreclose. But they are essentially different. A mortgagee has no responsibility whatever concerning the title of the mortgagor. He is entitled to foreclose it, such as it is. Upon the other hand the vendor who has given a title bond comes himself clothed with obligations as to the title. He has a contract to perform regarding the land before he can demand payment. He must make, or offer to make, a title before he can put the vendee in default. If he were to sue the purchaser at law, without first having performed the conditions on his part, and tendered such title as he was bound to make, he would show no cause of action, and could not recover. *Lewis v. Davis, 21 Ark., 235; Thomas v. Lanier, 23 Ib., 639; Sorrells v. McHenry, 38 Ib., 127.*

It would be very strange if the rule in chancery were so substantially different that a complainant might enforce specific performance of a contract without any offer or showing of readiness on his own part to fulfill those conditions which formed the considerations for the undertaking which he seeks to enforce against the defendant. It would violate one of the fundamental maxims of equity "He who seeks equity must do equity" and he must show by his bill that he stands ready to do it. The rule at law has been relaxed in equity on account of the more flexible

Atkinson, as Ad., et al. v. Hudson, Trustee.

nature of its proceedings, by which it can do justice by compensatory orders, and the imposition of conditions, and it is now the settled doctrine that a tender *before suit* is not essential to the remedy of a specific performance, for if a tender be made of a deed at the time of the suit, and in the suit, the Chancellor may give the complainant what he then shows to be just, and relieve the defendant of the costs of a suit which might not have been necessary if the tender had been properly made before. But this is a relaxation of practice, and no abandonment of a principle. I have never heard of a case anywhere, and I am sure there is not one in our reports, where a court of chancery has given a vendor by title bond a decree for his purchase money, and a lien upon the land, without any offer by him at any time to fulfill his own obligation by making a deed.

In *Turner, adm'r, v. Lassiter, 27 Ark., 662,* this court held that the holder of a note given for the purchase money of real estate, seeking to subject the property to its payment, must tender a deed with his bill—that is, when the payment of the money is dependent upon the execution of a deed.

In *McGehee v. Blackwell, et al., 28 Ark., 27,* in which it was held that the tender need not be made before suit, save as affecting costs, a deed was actually tendered in open court, after a demurrer to the complaint had been sustained for want of an allegation of a prior tender. That was held sufficient.

In *Anderson, Ad., v. Mills, 28 Ark., 175,* in which it was again repeated that a tender before suit was not essential to its maintenance, the complainant did offer to bring into court a deed for the lands, and actually brought it in, with exhibits of his title papers. The failure to tender the deed

Atkinson, as Ad., et al. v. Hudson, Trustee.

before suit was only made an objection after appeal here, and was held not sustainable.

In *Coldcleugh v. Johnson, 34 Ark., 312*, where lands had been sold by a husband and wife by title bond, and the notes had been asigned, it was held that the assignee suing to enforce the lien should have made the husband and wife parties in order that their legal title might be divested, *or* should have tendered a sufficient deed executed by them to the purchaser. In this case the principle is that the holder of the note being unable himself to fulfill the conditions, was nevertheless under obligations to see to it that the vendors should be compelled to execute them, if they would not do so voluntarily, and that he must do so before he could obtain a decree for the money.

In *Price v. Sanders et al., 39 Ark., 307*, it was again held that the assignee of a note, given in purchase of lands sold by title bond, could not sustain an action to foreclose, without bringing in the heirs of the vendor and assignor; that their title might be divested for the benefit of defendants. This was a case where by the death of the vendor a tender was impossible, but the complainant was required to take equivalent steps to secure to defendants their title, before his bill could be maintained.

Throughout all our decisions there runs the same key note, that one who has contracted to convey lands for a consideration will not be heard to claim that consideration without, at least in reasonable time, offering and showing himself willing to perform his own part. He must not wait to be compelled to do so. As *Mr. Pomeroy* says in his work on *Equity*, he must show himself "ready, willing, desirous, prompt and eager." *Sec. 1407, n. 1.*

All the conflict of decisions with regard to tender have been regarding the time; none with regard to the necessity of the thing itself as a requisite for relief. Whether the

Atkinson, as Ad., et al. v. Hudson, Trustee.

tender *must* be made before suit, or whether it *may* be made in the suit, is the mooted point. Arkansas has at different times been on both sides of this question, but has now become well settled upon the latter line. "According to one group of cases," says Mr. Pomeroy (*ubi supra*), "the strict legal rule is enforced. Where the stipulations are mutually dependent, the plaintiff must make an actual tender, and must demand performance *before bringing his suit*." The other group, which appears to be larger, and which he thinks asserts the true equitable doctrine, holds an actual tender of the deed before suit not to be essential. "It is enough that he is ready and willing and offered at the time specified, and even that he is ready and willing at the time of bringing the suit." * * * "The plaintiff's performance will be provided for in the decree, and his previous neglect will only affect his right to costs."

I take this latter group to represent the result, in the main, of the more recently expressed opinions of this court, as well as the doctrine which prevailed aforetime under the old judges.

In the first decision rendered in this court in the fall of 1866, when Walker, Compton and Clendennin were restored to the bench (the same court which rendered the decision in the case of *Hawkins v. Filkins*), it was held that "a vendor who comes into a court of equity to enforce the execution of a contract for the sale of lands, should tender a perfect and unincumbered title; at all events, such a title as he covenanted to make." *Hodges, ex parte, 24 Ark., 194.*

It would be but empty sound to say this, if the complainant should wholly decline to make any tender before or at or during the suit, and the defendant could not be heard to object either by demurrer or by answer.

Atkinson, as Ad., et al. v. Hudson, Trustee.

There would be strong authority for holding the complaint now in judgment demurrable if it had set forth the title bond and omitted to make the tender. As it is, it does not appear from the complaint whether the title bond was in such terms as to make a tender essential. It would have been better for the defendants to have moved to have it made more definite and certain.

Waiving that, however, the defendant did clearly make it appear by his answer, that the payment of the money and the execution of the deed were to be mutually dependent, and that no deed had been tendered before or after the beginning of the suit. That was a good and proper answer. The complainant might still have amended his bill, but preferred to demur. That did not indicate that he was ready, willing and prompt to do on his part what justice required. It is the party that moves the court who must first show readiness to do equity. He could not decline that and require the defendant whom he had forced into the tribunal to come forward first and offer to make payment.

The demurrer to the first paragraph of the answer should have been overruled. For error in sustaining it, the decree should be reversed and the cause remanded with directions to overrule the demurrer to the first paragraph of the answer, and for further proceedings. We perceive no error in sustaining the demurrer to the second paragraph. Reverse and remand as indicated.